IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**TERRELL PATRICK CORVETTE HOPPER**                        **PETITIONER**

v.                                                                                      No. 4:18CV243-MPM-DAS

**MISSISSIPPI DEPARTMENT OF CORRECTIONS**                    **RESPONDENT**

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* petition of Terrell Patrick Corvette Hopper for a writ of *habeas corpus* under 28 U.S.C. § 2254. The State has responded to the petition, and the matter is ripe for resolution. For the reasons set forth below, the instant petition for a writ of *habeas corpus* will be denied.

### *Habeas Corpus* Relief Under 28 U.S.C. § 2254

The writ of *habeas corpus*, a challenge to the legal authority under which a person may be detained, is ancient. Duker, The English Origins of the Writ of Habeas Corpus: A Peculiar Path to Fame, 53 N.Y.U.L.Rev. 983 (1978); Glass, Historical Aspects of Habeas Corpus, 9 St. John's L.Rev. 55 (1934). It is "perhaps the most important writ known to the constitutional law of England," *Secretary of State for Home Affairs v. O'Brien*, A.C. 603, 609 (1923), and it is equally significant in the United States. Article I, § 9, of the Constitution ensures that the right of the writ of *habeas corpus* shall not be suspended, except when, in the case of rebellion or invasion, public safety may require it. *Habeas Corpus*, 20 Fed. Prac. & Proc. Deskbook § 56. Its use by the federal courts was authorized in Section 14 of the Judiciary Act of 1789. *Habeas corpus* principles developed over time in both English and American common law have since been codified:

> The statutory provisions on *habeas corpus* appear as sections 2241 to 2255 of the 1948 Judicial Code. The recodification of that year set out important procedural limitations and additional procedural changes were added in 1966. The scope of the

> writ, insofar as the statutory language is concerned, remained essentially the same, however, until 1996, when Congress enacted the Antiterrorism and Effective Death Penalty Act, placing severe restrictions on the issuance of the writ for state prisoners and setting out special, new *habeas corpus* procedures for capital cases. The changes made by the 1996 legislation are the end product of decades of debate about *habeas corpus*.

*Id*. Under 28 U.S.C. § 2254, a federal court may issue the writ when a person is held in violation of the *federal* Constitution or laws, permitting a federal court to order the discharge of any person held by a *state* in violation of the supreme law of the land. *Frank v. Mangum*, 237 U.S. 309, 311, 35 S. Ct. 582, 588, 59 L. Ed. 969 (1915).

### Facts and Procedural Posture

The Mississippi Court of Appeals summarized the facts of Mr. Hopper's two trials:

*Procedural History of Trial 1*

On June 3, 2003, a Coahoma County [g]rand [j]ury returned a multi-count indictment against Terrell Patrick Corvette Hopper ... and Patrick Parker, charging Hopper with aggravated assault and aggravated assault of a law enforcement officer and Patrick Parker with accessory after the fact.

Hopper was arraigned on June 13, 2003, represented by Charles McPherson. The case was assigned to the Honorable Circuit Court Judge Larry O. Lewis. A little over one month after his arraignment, Hopper and Parker were tried together. Hopper was convicted of both counts, and Parker was acquitted. Hopper was sentenced to twenty years for aggravated assault and thirty years for aggravated assault against a law enforcement officer, to run consecutively.

Hopper filed his motion for a new trial on August 25, 2003. That motion was denied on November 12, 2003.

*Procedural History of Trial 2*

On June 3, 2003, a Coahoma County [g]rand [j]ury returned a multi-count indictment against [Hopper,] ... charging [him] with armed robbery, kidnap[p]ing, and nine counts of aggravated assault against a law enforcement officer.

Hopper was arraigned on June 13, 2003, [and again] represented by [McPherson]. The case was assigned to [Judge] Lewis. On November 10, 2003, Hopper was brought to trial and ultimately acquitted of three counts of aggravated assault, but convicted of six counts of aggravated assault. Hopper was sentenced to serve a total

of thirty years concurrent on all counts of aggravated assault and thirty-seven years on armed robbery, to be served consecutive to Hopper's sentences in Trial 1, for a total of eighty-seven years[,] putting the two trials sentences together.

Hopper filed his motion for a new trial on December 6, 2003. That motion was denied on December 10, 2003.

*Additional Procedural History*

This Court originally docketed the appeals of Trials 1 and 2 as 2006-KA[-0]1607 and 2005-KA-[00]526, respectively. Because Hopper's attorney never proceeded with his appeal, both appeals were dismissed. The cases languished until, through a series of post-conviction[-]relief and habeas petitions, the Mississippi Supreme Court allowed Hopper to proceed in an out[-]of[-]time appeal, and consolidated both trials into this cause number. The Supreme Court appointed the Indigent Appeals Division of the Office of State Public Defender. This case was subsequently assigned to [this Court].

*Facts of Trial 1*

On August 16th, 2002, in Friars Point, Mississippi, Doyle Hunter was in front of a local store when he was shot by [Hopper]. Hunter was hit in the face and in the shoulder blade. Hunter was transported to a hospital in Memphis and lived. Earlier that night Hunter and Hopper had a disagreement. Hunter was intoxicated. Hunter testified that he 'didnt think' that the argument was over drugs and denied being in a gang. Hopper, however, testified that Hunter had told him that Chief Anthony Smith [of the Friars Point Police Department] wanted to see Hopper.

The afternoon of the next day, Chief [ ] Smith[,] ... having developed Hopper as a suspect in the shooting of Hunter, spotted who he believed to be Hopper. Chief Smith parked his vehicle, and, when he reached over to put his keys in his passenger seat, Chief Smith was shot through the lower neck, near his shoulder. When Chief Smith turned, he saw Hopper with a gun pointed towards him. Chief Smith yelled for a passerby, and directed him to use the radio to call the sheriff's department ... By the time Chief Smith regained his faculties, Hopper had already fled the scene.

That evening, authorities communicated with [ ] Parker, who told them that Hopper had stopped by Parker's residence. Police attempted to arrest Hopper at Parker's house, but were unable to, the circumstances of which resulted in the charges in Hopper's second trial, discussed below.

Hopper was eventually apprehended at his grandmother's house. He was found hiding in a trunk. Police recovered a 9mm handgun. Hopper stipulated that the weapon was assigned to and used by Officer John Martin Harris with the Friars Point Police Department.

He was interviewed while at the hospital. Hopper had been shot prior to his arrest. Investigators testified that Hopper told them that Hopper had shot both Chief Smith and [ ] Hunter.

Hopper testified that on the night of [ ] Hunter's shooting, [ ] Hunter was speaking to him about some drugs missing from Chief Smith ... Hopper then realized that Joseph Brown had a gun in his face. Hopper and Edwin Brown, who was also there, wrestled over the gun and it accidently went off, hitting Hunter. In his testimony, Hopper flatly denied shooting Hunter. Hopper testified that he, Hunter, Marcus Williams, and Edwin Brown were selling drugs. Hopper wished to stop selling drugs, because "it was getting too deep." Hopper testified that 15 kilos of cocaine had gone missing, and that he was being accused of stealing it. Hopper testified that the Friars Point Police Department was in the business of selling drugs, and Chief Smith and he had "made transactions" in the past.

Hopper admitted to shooting Chief Smith, but claimed to do so because if Chief Smith had taken him into custody, Hopper believed he would not make it to the jail and would be killed. Hopper testified that later that evening, he went to Parker's house when Parker was not there ....

*Facts of Trial 2*

In the early morning hours of August 18, 2002, Coahoma Sheriff Andrew Thompson was called to Parker's house where police believed they had located Hopper. When he arrived, it became apparent that two officers had been shot.

Officer Harris had gone to the house to speak with Parker. Parker was initially uncooperative, but agreed to go with officers. Parker asked if he could secure the residence, and Officer Harris and Deputy Victor Randall followed him, with guns drawn, because it was dark inside. Otha Hunter and Oliver Mitchell were also on the porch at the time. Officer Harris told Deputy Randall to cover the right side of the house, and Harris was to take the left. Officer Harris testified that he took three to four steps into the house and shots rang out.

Officer Harris saw that he was hit in the right elbow. After going to the hospital, he learned that he had been hit three times. Officer Harris testified he never fired a shot. Deputy Randall[, who] was behind Officer Harris, tried to grab him, but was shot himself. Deputy Randall backed out of the house, and Hopper shut the door and placed a piece of furniture in front of it. Hopper took Harris's gun, his extra magazine, and his handheld radio. Officer Harris testified that at one point Hopper tried to drag Officer Harris to the door to be released, but he could not because Hopper had been injured.

Hopper had taken a police radio and was screaming over the radio. While Officer Harris was down, several shots were fired from the house, striking several vehicles. Eventually, law enforcement tried to enter the house using a stack, where several

officers line up in a row behind a shield. When officers used the battering ram on the door, nothing happened. After using the ram again, it became apparent that something was against the door. At that point, shots rang out, hitting the shield.

[Several officers hid behind a shield], with Deputy Neil Mitchell ... and Officer Kenny Scott in the back. Both [Deputy] Mitchell and [Officer] Scott were shot. Deputy Mitchell testified that while he was behind the shield, shots rang out, and he was hit in the right leg.

Eventually, Officer Harris had 911 call the law enforcement outside to let them know that Hopper had left the house .... Police recovered a [.]40 caliber pistol from the house. The parties stipulated that the firearm was Hopper's.

As noted above, Hopper was eventually arrested at his grandmother's house. Because he was shot, he was taken to the hospital, where he received treatment. In a statement to police, he admitted to shooting Officer Harris's 9mm handgun. At Hopper's grandmother's [house] police found a 9mm pistol. The parties stipulated that the pistol was that of Officer Harris.

Hopper testified that he was in Parker's house "trying to lay low," because he felt that his life was in danger. Hopper testified [that] when authorities were entering the house, he heard them yell[,] "Sheriffs Department," but before Hopper could raise his hands, Deputy Randall began to open fire, shooting Hopper in the arm, and Officer Harris in the back. Hopper testified that when the next group of officers attempted to enter the house, they, too, fired first. Hopper testified that he explained to Harris his fears of the Friars Point Police Chief, because of his involvement in the drug trade. Eventually, Hopper [handed] the phone to Officer Harris ... and left the house.

*Hopper*, 220 So. 3d 224, 227-30 (¶ 2).

## Federal Petition for a Writ Of *Habeas Corpus*

Mr. Hopper filed the instant petition on October 24, 2018, raising the following issues, *pro se*:

**Ground One**: Ineffective assistance of trial counsel, Charles E. McPherson, for failing to file motions on behalf of Hopper, even though Hopper and family ordered trial counsel to do so, including a motion to sever co-defendants, a motion for change of venue, and a motion for direct appeals.

**Ground Two**: Ineffective assistance of appellate counsel, Charles E. McPherson, for failing to file Hopper's appeal when ordered by trial court to do so.

**Ground Three**: Ineffective assistance of appellate counsel Justin T. Cook for ignoring significant and obvious claims of ineffective assistance of trial counsel, such as competence evidence given to jury (Hopper never had a competency hearing), jury not free from opinion (juror called Hopper a lunacy case), impartial jury (jurors related

to victims, knew nearly all involved, and knew of case), and co-defendant counsel refused to follow evidentiary rulings of the trial court boundaries of *voir dire* concerning another matter connected to case.

**Ground Four**: Whether trial judge caused trial court to abuse its discretion, including never changing venire, never ordering a competency hearing, allowing co-defendant's attorney to give incompetence evidence to jury, and allowing co-defendant's attorney to disregard evidentiary rulings, to conduct *voir dire* concerning another matter connected to the case, and to point his finger around the courtroom like a gun and make a Bang! Bang! Boom! sound.

ECF doc. 1.

## The Doctrines of Procedural Default and Procedural Bar

Mr. Hopper has not presented to the Mississippi Supreme Court the claim in Ground Three that appellate counsel was ineffective for failing to raise the issue of competency evidence given to the jury. He also failed to raise his allegations in Ground Four that the trial court erred by: (1) failing to order a competency hearing; and (2) allowing codefendant's attorney to present competency evidence to jury. As such, Mr. Hopper has not exhausted his state remedies as to these claims, and there is no path to raise these issues, as he has filed both a direct appeal and a state motion for post-conviction collateral relief ("PCR"). *See* Miss. Code Ann. § 99-39-27(9).[1]

If an inmate seeking *habeas corpus* relief fails to exhaust an issue in state court – and no more avenues exist to do so – under the doctrine of *procedural default* that issue cannot be raised in a federal *habeas corpus* proceeding. *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995). Similarly, federal courts have no jurisdiction to review a *habeas corpus* claim "if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent

---

[1] Under Miss. Code Ann. § 99-39-27(9), "[t]he dismissal or denial of an application under this section is a final judgment and shall be a bar to a second or successive application under this chapter...." As set forth above, the Mississippi Supreme Court denied Hopper's application for post-conviction relief on the merits. As such, any further attempts on Hopper's part to file a subsequent PCR in state court would be barred as a successive writ.

of the merits of the federal claim and an adequate basis for the court's decision." *Roberts v. Thaler*, 681 F.3d 597, 604 (5th Cir. 2012). Thus, a federal court may not consider a *habeas corpus* claim when, "(1) a state court [has] declined to address [those] claims because the prisoner [has] failed to meet a state procedural requirement, and (2) the state judgment rests on independent and adequate state procedural grounds." *Maples v. Thomas*, ––– U.S. –––, 132 S.Ct. 912, 922, 181 L.Ed.2d 807 (2012) (alterations in original) (internal quotation marks omitted). This doctrine is known as *procedural bar*.

A state procedural rule is "independent" when the state law ground for decision is not "interwoven with the federal law." *Michigan v. Long*, 463 U.S. 1032, 1040, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983). A state law ground is interwoven with federal law if "the state has made application of the procedural bar depend on an antecedent ruling on federal law [such as] the determination of whether federal constitutional error has been committed." *Ake v. Oklahoma*, 470 U.S. 68, 75, 105 S. Ct. 1087, 84 L. Ed. 2d 53 (1985); *see also* State court decision must not be interwoven with federal law, Federal Habeas Manual § 9B:24.

To determine the adequacy of the state procedural bar, this court must examine whether the state's highest court "has strictly or regularly applied it." *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997) (*citing Lott v. Hargett*, 80 F.3d 161, 165 (5th Cir. 1996)). The petitioner, however, "bears the burden of showing that the state did not strictly or regularly follow a procedural bar around the time of his appeal" – and "must demonstrate that the state has failed to apply the procedural bar rule to claims identical or similar to those raised by the petitioner himself." *Id*.

**Cause and Prejudice – and Fundamental Miscarriage of Justice –
As Ways to Overcome Procedural Bar**

Whether a petitioner's claims are procedurally defaulted or procedurally barred, the way he may overcome these barriers is the same. First, he can overcome the procedural default or bar by showing cause for it – and actual prejudice from its application. To show cause, a petitioner must prove that an external impediment (one that could not be attributed to him) existed to prevent him from raising and discussing the claims as grounds for relief in state court. *See United States v. Flores*, 981 F.2d 231 (5th Cir. 1993). To establish prejudice, a petitioner must show that, but for the alleged error, the outcome of the proceeding would have been different. *Pickney v. Cain*, 337 F.3d 542 (5th Cir. 2003).

Even if a petitioner fails to establish cause for his default and prejudice from its application, he may still overcome a procedural default or bar by showing that application of the bar would result in a fundamental miscarriage of justice. To show that such a miscarriage of justice would occur, a petitioner must prove that, "as a factual matter, that he did not commit the crime of conviction." *Fairman v. Anderson,* 188 F.3d 635, 644 (5th Cir. 1999) (citing *Ward v. Cain,* 53 F.3d 106, 108 (5th Cir. 1995)). Further, he must support his allegations with new, reliable evidence – that was not presented at trial – and must show that it was "more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Fairman,* 188 F.3d at 644 (citations omitted).

For the reasons set forth above, the court may not review these claims unless Mr. Hopper can show either cause for his default and prejudice resulting from its application – or that a fundamental miscarriage of justice would occur if the court declined to review the merits of these claims. He has not made such a showing.

While attorney error may constitute cause to overcome procedural default, *Edwards v. Carpenter,* 529 U.S. 446, 452 (2000), it does not do so in this case. Mr. Hopper claimed in the instant

- 8 -

petition that appellate counsel was ineffective for failing to raise the issue of competency evidence given to the jury – and also claimed that the trial court erred by allowing co-defendant's attorney to give "incompetence" evidence to jury. Mr. Hopper, however, filed a *pro se* supplemental brief, as well as a motion for post-conviction relief – and could have raised these issues in those pleadings. In any event, these claims are without substantive merit, as Mr. Hopper's competency was not an issue at either of his trials. *See generally*, SCR, Cause Nos. 2005-KA-526-COA and 2006-KA-1607-COA. Indeed, Mr. Hopper has acknowledged that he did not suffer from any mental or emotional illness or disease. SCR, Cause No. 2006-KA-526, Vol. 4, p. 324; *see also id.* at 348-49. For these reasons, Mr. Hopper has not shown that attorney error constitutes cause to overcome procedural default of his unexhausted claims in Grounds Three and Four. Hence, Mr. Hopper has not shown cause, as he has not proved that something external to him prevented him from presenting his claims in state court. In the absence of cause, the court need not consider the issue of prejudice.

Further, as Mr. Hopper has not proved that, "as a factual matter, that he did not commit the crime of conviction," he has not shown that a fundamental miscarriage of justice would occur if the court applied the default. *Fairman v. Anderson,* 188 F.3d 635, 644 (5th Cir. 1999) (citing *Ward v. Cain,* 53 F.3d 106, 108 (5th Cir. 1995)). He has not provided new, reliable evidence showing that, "more likely than not[,] no reasonable juror would have convicted him in light of the new evidence." *Fairman,* 188 F.3d at 644 (citations omitted). For these reasons, Mr. Hopper has procedurally defaulted his claims that: (1) his appellate counsel was ineffective for failing to raise an issue regarding competency evidence given to the jury, as set forth in Ground Three; (2) the trial court erred by failing to order a competency hearing, as set forth in Ground Four; and (3) the trial court erred by allowing the co-defendant's attorney to give competency evidence to the jury, as set forth in Ground Four.

**Grounds Reviewed on the Merits in State Court**

The Mississippi Supreme Court has already considered Grounds One, Two, Three, and Four[2] on the merits and decided those issues against the petitioner; hence, these claims are barred from *habeas corpus* review by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d), unless they meet one of its two exceptions:

> (d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* (emphasis added). The first exception, subsection (d)(1), applies to questions of law. *Morris v. Cain*, 186 F.3d 581 (5th Cir. 2000). The second exception, subsection (d)(2), applies to questions of fact. *Lockhart v. Johnson*, 104 F.3d 54, 57 (5th Cir. 1997). Since the petitioner's claims challenge both the application of law and the finding of fact, this court must consider the exceptions in both subsections.

Under subsection (d)(1), a petitioner's claim merits *habeas* review if its prior adjudication "resulted in a decision that was *contrary to*, or involved an *unreasonable application* of, clearly established Federal law." *Id.* (emphasis added). A state court's decision is *contrary to* federal law if it arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law, or if it decides a case differently from the Supreme

---

[2] The court, however, excludes from this discussion the claims in Grounds Three and Four that are subject to procedural default, as discussed immediately above.

Court on a set of "materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523 (2000). A state court's decision involves an *unreasonable application of* federal law if it identifies the correct governing principle but unreasonably (not just incorrectly) applies that principle to facts of the prisoner's case; this application of law to facts must be *objectively* unreasonable. *Id.* at 1521. As discussed below, the petitioner has not shown that the Mississippi Supreme Court unreasonably applied the law to the facts, or that the court's decision contradicted federal law. Accordingly, the exception in subsection (d)(1) does not apply to Grounds One, Two, Three, and Four of the petitioner's claim.

Nevertheless, under § 2254(d)(2) these grounds may still merit review if those facts to which the supreme court applied the law were determined unreasonably in light of the evidence presented. Because the supreme court is presumed to have determined the facts reasonably, it is the petitioner's burden to prove otherwise, and he must do so with clear and convincing evidence. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000); 28 U.S.C. § 2254(e)(1). As discussed below, the petitioner has failed to meet this burden; as such, he cannot use subsection (d)(2) to move these claims beyond § 2254(d), which bars from *habeas corpus* review issues already decided on the merits.

**Grounds One, Two, and Three: Ineffective Assistance of Counsel**

In Ground One, Mr. Hopper argues that trial counsel provided ineffective assistance for failing to file motions for: (1) severance; 2) change of venue; and 3) direct appeal. In Ground Two, he argues that trial counsel was ineffective for refusing to file his direct appeal after ordered by the trial court to do so. In Ground Three, Mr. Hopper argues that appellate counsel was ineffective for failing to raise various issues concerning the *voir dire*, the jury, and actions of his co-defendant's counsel. Mr. Hopper raised these claims of ineffective assistance of counsel in the state's highest court either in his

direct appeal or on post-conviction review. Hence, the Mississippi Supreme Court considered and rejected these claims of ineffective assistance of trial and appellate counsel. *See* Exhibit C (*Hopper, supra)*; *see also* Exhibit D.

The court must address claims of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prove that defense counsel was ineffective, the petitioner must show that counsel's performance was deficient and that the deficiency resulted in prejudice to her defense. Under the deficiency prong of the test, the petitioner must show that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. The court must analyze counsel's actions based upon the circumstances at the time – and must not use the crystal clarity of hindsight. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). To prove prejudice, the petitioner must demonstrate that the result of the proceedings would have been different or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995), *cert. denied*, 116 S.Ct. 557 (1995); *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *Sharp v. Johnson*, 107 F.3d 282, 286 n.9 (5th Cir. 1997). "When §2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011); *Premo v. Moore*, 131 S.Ct. 733 (2011).

### Failure of Trial Counsel to File a Motion to Sever Hopper's and His Codefendant's Trial – and Failure to File a Motion for Change of Venue

In his direct appeal, Hopper, through counsel, alleged that his trial counsel was ineffective for failing to request a severance of Hopper's and his co-defendant's trial. *See* SCR, Brief of Appellant.

- 12 -

The Mississippi Court of Appeals stated that even if such a request is made, the granting of a severance is "in the discretion of the trial judge," and further found that, "[b]ecause the decision whether to move for severance was within the purview of trial strategy, Hopper's claim fails." *Hopper*, 220 So. 3d at 230-31 (¶¶ 6-7). Mr. Hopper also argued in his PCR motion that his trial counsel was ineffective for failing to file any pre-trial motions, including a motion to sever. *See* SCR, Cause No. 2018-M-480. The Mississippi Supreme Court found that these claims of ineffective assistance of counsel "fail to pass the standard set forth in in *Strickland v. Washington*, 446 U.S. 668, 687 (1984)." Exhibit D.

Similarly, in his direct appeal, Mr. Hopper, through counsel, alleged that his trial counsel was ineffective for failing to seek a change of venue. The Mississippi Court of Appeals held that "defense counsel is under no duty to attempt to transfer venue and, therefore, the decision not to would fall within the realm of strategy." *Hopper*, 220 So. 3d at 231 (¶ 12). As such, the court found that Hopper's ineffective assistance of counsel claim regarding failure to seek a change in venue was without merit. *Id*. As stated above, Mr. Hopper also argued in his PCR motion that his trial counsel was ineffective for failing to file any pre-trial motions. *See* SCR, Cause No. 2018-M-480. The Mississippi Supreme Court found that Mr. Hopper's claims of ineffective assistance of counsel "fail to pass the standard set forth in *Strickland v. Washington*, 446 U.S. 668, 687 (1984)." Exhibit D.

"A court must indulge a strong presumption that counsels conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal citations omitted). Further, "trial strategy enjoys a strong presumption of effectiveness," and strategic decisions "are given a heavy measure of deference and should not be second-guessed." *See Pape v. Thaler*, 645 F.3d 281, 291 (5th Cir. 2011). "Given the almost infinite

variety of possible trial techniques and tactics available to counsel, this Circuit is careful not to second guess legitimate strategic choices." *Yohey v. Collins,* 985 F.2d 222, 228 (5th Cir. 1993).

### Failure to Request a Severance

As Mr. Hopper was the only defendant in the second trial, his claim that counsel was ineffective for failing to request a severance from his codefendant involves only his first trial. While he does not elaborate on this claim in the instant petition, his counsel argued on direct appeal that, because the co-defendant's theory of defense was that Mr. Hopper was "deranged," and the co-defendant was under duress, Mr. Hopper and his codefendant had a conflict of interest. *See* SCR, Brief of Appellant. As stated above, the Mississippi Supreme Court found that, as counsel's decision regarding requesting a severance is a matter of trial strategy, the trial court has discretion regarding whether to grant or refuse a severance. Indeed, "[t]he mere fact that codefendants have 'mutually antagonistic defenses' does not require the trial court to sever the case." *Brown v. Dretke*, 419 F.3d 365, 372 (5th Cir. 2005) (citing *Zafiro v. United States*, 506 U.S. 534, 538 (1993)). As such, even if Mr. Hopper had requested a severance based on his codefendant's theory of the case, the trial court would not have been required to grant one. A court should grant a severance "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id*. (citing *Zafiro*, 506 U.S. at 539). Mr. Hopper has identified no such circumstances in his first criminal trial.

### Failure to Seek a Change of Venue

Though Mr. Hopper did not elaborate on his allegation that his trial counsel was ineffective for failing to seek a change of venue, his counsel on direct appeal argued that the trial was fundamentally unfair because the venire knew about the facts of the case, a fact which should have caused trial counsel to request a change of venue. *See* SCR, Brief of Appellant. The record reveals that the trial

court empaneled a fair and impartial jury in each of Mr. Hopper's trials. In both trials, the court and attorneys conducted a thorough examination of potential jurors, including questioning in chambers and dismissing for cause each juror who indicated he or she could not be fair and impartial. *See generally* SCR, Cause No. 2006-KA-1607-COA, Vol. 2; Vol. 3, pp. 141-168; *see also* SCR, Cause No. 2005-KA-526-COA, pp. 2-91.

As stated above, the Mississippi Supreme Court found that trial counsel is under no duty to request a change of venue, and the decision whether to request one is a matter of trial strategy. Thus, Mr. Hopper has not shown that the trial court would have granted a severance or change in venue, even if counsel had requested them.

The Mississippi Court of Appeals discussed Mr. Hopper's contention that his trial counsel failed to provide any meaningful representation:

> To say there was overwhelming evidence to convict Hopper at both trials is an understatement. At the first trial, over twenty witnesses testified on the State's behalf, including both victims. Fourteen witnesses, including the *wounded* officers, testified for the State at the second trial. It is highly improbable that, but for any of counsel's alleged professional errors, the outcome of Hopper's trials would have been any different. Even so, it is fully apparent from the record that Hopper received effective assistance of counsel.

*Hopper*, 220 So. 3d at 232 (¶ 13) (emphasis in original). There are some trials in which the evidence against the defendant is so overwhelming that showing prejudice arising out of trial counsel's errors is nigh on impossible. The Mississippi Supreme Court describes a defendant in such a case as "hopelessly guilty," as "it is impossible to imagine a Mississippi jury that would not have convicted [him]." *Woodward v. State*, 635 So. 2d 805, 809 (Miss. 1993); *see also Bennett v. State*, 18 So.3d 272 (Miss. Ct. App. 2009). Mr. Hopper is such a defendant in the present case.

A review of the record reflects that Mr. Hopper has not overcome the presumption that his trial counsel's actions were trial strategy, and as such, cannot show deficient performance on behalf of

counsel. And, given the mountain of evidence against him, Mr. Hopper cannot show resulting prejudice, as "[i]t is highly improbable that, but for any of counsel's alleged professional error, the outcome of Hopper's trials would have been any different." *Hopper*, *supra*. As such, the Mississippi Supreme Court's denial of these claims of ineffective assistance of trial counsel was not contrary to, nor an unreasonable application of, clearly established federal law. Mr. Hopper is not entitled to relief on these claims of ineffective assistance of trial counsel.

### Failure of Trial (and First Appellate) Counsel to File Hopper's Appellant's Brief

In his "Motion to Seek Leave to Proceed in the Trial Court" and "Petition for Writ of Habeas Corpus" filed on October 22, 2014, Mr. Hopper argued that his trial (and first appellate) counsel was ineffective for failing to file his appellate brief. *See* SCR, Cause No. 2014-CT-1273. However, the Mississippi Supreme Court later granted Mr. Hopper an out-of-time appeal and appointed new counsel to represent him on appeal. *See* Exhibit A. In addition, Mr. Hopper filed a *pro se* supplemental brief on appeal. As such, Mr. Hopper has received relief regarding this claim of ineffective assistance of counsel, and his newly appointed appellate counsel filed an appellant's brief on his behalf. As such, Mr. Hopper suffered no prejudice to his legal position from his trial (and first appellate) counsel's failure to file an appellant's brief.

### Failure of Appellate Counsel to Raise Issues Regarding Impartiality of the Jury and the Failure of Co-defendant's Counsel to Abide by the Trial Court's Evidentiary Rulings

In his amended PCR motion, Mr. Hopper argued that appellate counsel was ineffective for failing to raise issues concerning the impartiality of the jury and the co-defendant's attorney's failure to follow evidentiary rulings of the trial court. *See* SCR, Cause No. 2018-M-480. The Mississippi Supreme Court found that these claims of ineffective assistance of counsel "fail to pass the standard set forth in *Strickland v. Washington*, 446 U.S. 668, 687 (1984)." Exhibit D.

In reviewing the performance of appellate counsel, the two-part *Strickland* test applies. *See*

*Evitts v. Lucey*, 469 U.S. 387, 397-99 (1985). In *Jones v. Barnes*, 463 U.S. 745 (1985), the Supreme Court held that appellate counsel does not have a duty to raise every "colorable" claim on appeal. Thus, appellate counsel has broad discretion in choosing which issues are more likely to be successful. *Jones*, 463 U.S. at 751-54. Indeed, "[a] brief that raises every colorable issue runs the risk of burying good arguments – those that ... 'go for the jugular,'" under weaker ones. *Id*. at 753 (internal citation omitted). Appellate counsel who raises and extensively briefs a number of issues is not ineffective for declining to present every possible point on appeal. *Wicker v. McCotter*, 783 F.2d 487, 497 (5th Cir. 1986).

As set forth above, Mr. Hopper's appellate counsel raised many claims of ineffective assistance of trial counsel in the appellant's brief. *See* SCR, Brief of Appellant. In addition, appellate counsel's brief was thorough and well-researched. *See id*. Further, Mr. Hopper argued several additional points in his *pro se* supplemental brief, which the state appellate court addressed in its opinion. *See* SCR, *Pro Se* Supplemental Brief. For these reasons, Mr. Hopper clearly had the opportunity to present the additional claims he alleges appellate counsel should have raised. Indeed, Mr. Hopper raised similar claims in his PCR motion and amended PCR motion, which the Mississippi Supreme Court denied. *See* SCR, Cause No. 2018-M-480; *see also* Exhibit D.

As such, Mr. Hopper's appellate counsel was not deficient for presenting claims he deemed would most likely be successful – and omitting the claims at issue in this ground for relief. Mr. Hopper suffered no prejudice as a result. Mr. Hopper has not shown that the Mississippi Supreme Court's denial of his claims of ineffectiveness of trial and appellate counsel during direct appeal or post-conviction relief proceedings was "contrary to, or an unreasonable application of, the standards, provided by the clearly established federal law (*Strickland*), for succeeding on his [ineffective assistance of counsel] claim." *See Busby*, 359 F.3d at 717. Additionally, the state courts' decisions

were not based on an unreasonable determination of the facts in light of the evidence. For these reasons, Mr. Hopper's claims in Grounds One, Two, and Three of the petition will be denied.

### Ground Four: Co-Defendant's Counsel Ignored Evidentiary Rulings

Mr. Hopper argues that the trial court erred in allowing codefendant's counsel to disregard evidentiary rulings (such as pointing his finger around the courtroom like a gun and making bang sounds), exceeding the boundaries of *voir dire*, and "never changing the venire." Mr. Hopper raised these issues in his amended PCR motion, which the Mississippi Supreme Court denied. *See* SCR, Cause No. 2018-M-480; *see also* Exhibit D.[3]

First, Mr. Hopper's claims in Ground Four are conclusory, and "mere conclusory allegations do not raise a constitutional issue in a *habeas* proceeding." *Ross*, 694 F.2d at 1012 (citing *Schlang*, 691 F.2d at 798 (collecting cases)). Further, had Hopper's defense counsel objected to the actions of codefendant's counsel, the trial court would have issued a ruling. Counsel did not do so, and Mr. Hopper has not argued in the instant petition that trial counsel was ineffective for declining to object.

In any event, Mr. Hopper's claim challenging the trial court's handling of evidentiary matters is precluded from federal *habeas corpus* review because the rulings of state courts on evidentiary matters are solely issues of state law. *See Dickerson v. Guste*, 932F.2d 1142, 1145 (5th Cir. 1991) (citing *Cook v. Morrill*, 783 F.2d 593, 596 (5th Cir. 1986)). "[F]ederal *habeas corpus* relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)); *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law."). For this reason, an alleged violation of state law,

---

[3] The court has liberally construed the PCR motion and amended PCR motion to have raised these claims. The Mississippi Supreme Court's order denying the PCR motion did not specifically address these claims. Hence, under *Harrington*, *supra*, and *Johnson v. Williams*, 568 U.S. 289 (2013), these issues were denied on the merits.

by itself, does not merit federal *habeas corpus* relief. Federal courts "'do not sit as a 'super state supreme court' in [a *habeas corpus* ] proceeding to review errors under state law." *Dickerson*, 932 F.2d at 1145 (quoting *Martin v. Wainwright*, 428 F.2d 356, 357 (5th Cir. 1970)).

"A state court's evidentiary rulings present cognizable *habeas* claims only if they run afoul of a specific constitutional right or render the petitioner's trial fundamentally unfair." *Johnson v. Puckett*, 176 F.3d 809, 820 (5th Cir. 1999) (citing *Cupit v. Whitley*, 28 F.3d 532, 536 (5th Cir. 1994)). "[I]n reviewing state court evidentiary rulings, the federal *habeas* court's role 'is limited to determining whether a trial judge's error is so extreme that it constituted a denial of fundamental fairness' under the Due Process Clause." *Castillo v. Johnson*, 141 F.3d 218, 222 (5th Cir. 1998) (citations omitted); *see also Jackson v. Johnson*, 194 F.3d 641, 656 (5th Cir. 1999). The "erroneous admission of prejudicial testimony does not justify habeas relief unless the evidence played a 'crucial, critical, and highly significant' role in the jury's determination." *Jackson*, 194 F.3d at 656. None of the rulings at issue here come close to that mark.

"[A]s a general rule, a trial court's erroneous venire rulings do not constitute reversible constitutional error 'so long as the jury that sits is impartial.'" *Jones v. Dretke*, 375 F.3d 352, 355 (5th Cir. 2004) (citing *United States v. Martinez-Salazar*, 528 U.S. 304, 313 (2000)). As discussed above, in both of Mr. Hopper's trials, the trial court and attorneys conducted a thorough examination of potential jurors, including questioning in chambers and dismissing for cause each juror who indicated that he or she could not be fair and impartial for various reasons (such as prior knowledge of the case or knowing the defendant or potential witnesses). *See generally* SCR, Cause No. 2006-KA-1607-COA, Vol. 2; Vol. 3, pp. 141-68; *see also* SCR, Cause No. 2005-KA-526-COA, pp. 2-91. Therefore, the trial court did not err in not "changing the venire." Also, to the extent Mr. Hopper argues that the trial court should have *sua sponte* changed venue, under Mississippi law, a request for a change in

venue must follow statutory requirements, including a requirement that the request be in writing and be accompanied by supporting affidavits. See Miss. Code Ann. § 99-15-35. Though Mr. Hopper argues that trial counsel was ineffective for failing to request a change of venue, this claim is without merit (as discussed above).

For these reasons, the state appellate court's resolution of the issues in Ground Four was neither contrary to, nor did it involve an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. In addition, the decisions were not based on an unreasonable determination of the facts in light of the evidence. As such, the petitioner is not entitled to federal *habeas corpus* relief on his claim in Ground Four of the instant Petition.

## Conclusion

For the reasons set forth above, the instant petition for a writ of *habeas corpus* will be denied. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 25th day of October, 2021.

/s/ Michael P. Mills
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI